[Cite as *Brunett v. Brunett*, 2017-Ohio-307.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| MELISSA L. BRUNETT | : | Appellate Case No. 2016-CA-14 |
| | : | |
| Plaintiff-Appellant | : | Trial Court Case No. 07-DR-1092 |
| | : | |
| v. | : | (Domestic Relations Appeal from |
| | : | Common Pleas Court) |
| JOHN R. BRUNETT | : | |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of January, 2017.

. . . . . . . . . .

MELISSA L. BRUNETT, 1502 East Walt Avenue, Dayton, OH 45420
    Plaintiff-Appellant, *pro se*

THOMAS R. SCHIFF, Atty. Reg. No. 0039881, Hochwalt & Schiff, LLC, 500 Lincoln Park
Boulevard, Suite 216, Kettering, Ohio 45429-6412
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1} Melissa Brunett appeals the trial court's decision modifying the residential

parent and legal custodian of the parties' minor child from her to the child's father, John

Brunett. Finding no error, we affirm.

## I. Background

{¶ 2} The parties were married in 1987 and had two children together. The older child is emancipated. The younger child, "Audrey,"[1] was born in September 2001. Mother filed for divorce in 2007, and a divorce was granted in May 2008. In the divorce decree, Mother is designated as Audrey's residential parent and legal custodian.

{¶ 3} In December 2014, Father filed a motion for custody of Audrey. The matter was referred to a magistrate who, in April 2015, held an evidentiary hearing. Mother represented herself at the hearing. Mother, Father, and Mother's boyfriend testified. The magistrate issued a written decision granting Father's motion for custody and designating him Audrey's residential parent and legal custodian. Mother filed objections to the magistrate's decision pro se but later retained counsel who filed supplemental objections. The trial court conducted a de novo review of the entire record, including the transcript of the hearing. On February 11, 2016, the court overruled all of Mother's objections and designated Father the residential parent and legal custodian of Audrey.[2]

{¶ 4} Mother appealed.

## II. Analysis

{¶ 5} Mother retained counsel in this matter only to file objections to the magistrate's decision. After filing the notice of appeal, counsel withdrew. Mother filed her

---

[1] This is not her real name. We use this pseudonym to protect the minor child's identity.

[2] This is an amended entry. The original was entered in October 2015, but we held sua sponte that it is not a final, appealable order, because it does not contain the trial court's own resolution of Father's motion for custody, *compare Bennett v. Bennett*, 2d Dist. Clark No. 11 CA 52, 2012-Ohio-501.

appellate brief pro se. Her brief is a photocopy of the six supplemental objections to the magistrate's decision that her attorney filed with the trial court. In our review, we consider these objections as assignments of error challenging the trial court's decision.

**{¶ 6}** We apply a different standard of review than the trial court did, though. While the trial court reviewed the magistrate's decision de novo, we review the trial court's decision for abuse of discretion, *see Beismann v. Beismann*, 2d Dist. Montgomery No. 22323, 2008-Ohio-984, ¶ 20 (saying that "a reviewing court may not reverse a custody determination unless the trial court has abused its discretion"). "An abuse of discretion implies an attitude of the trial court that is unreasonable, arbitrary, or unconscionable. 'A decision is unreasonable if there is no sound reasoning process that would support that decision.'" (Citation omitted.) *Id.*, quoting *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

A. *Change in circumstances*

**{¶ 7}** In the first assignment of error, Mother argues that Father failed to allege in his custody motion that a change in circumstances has occurred so the magistrate should not have held a hearing on the motion. Mother says that she did not have adequate notice that the issue of a change in circumstances would be contested at the hearing. In the second assignment of error, Mother argues that even if holding the hearing was not erroneous, the magistrate erred by finding that a change in circumstances had occurred.

**{¶ 8}** The governing statute, R.C. 3109.04, pertinently states that a court may not modify custody "unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred

in the circumstances of the child [or] the child's residential parent." R.C. 3109.04(E)(1)(a). Mother is correct that Father does not allege a change in circumstances in his motion for custody. The magistrate acknowledged this but found based on the parents' testimony at the hearing that Father showed that a change had occurred.

{¶ 9} Because a change in circumstances is a threshold issue, the failure to allege a change obviates the need for a hearing. *In re Schwendeman*, 4th Dist. Washington No. 06CA33, 2007-Ohio-815, ¶ 26 (saying that "[w]here the motion does not include allegations that meet the threshold legal requirements that permit the court to consider the modification, the allocation of parental rights and responsibilities is not truly 'contested,' " and a hearing need not be held); *Wysong v. Wysong,* 12th Dist. Preble No. CA 2001-06-011, 2002 WL 205515, *3 (Feb. 11, 2002) (concluding that because the appellant failed to allege a change of circumstances, "the trial court did not abuse its discretion by finding no change of circumstances and denying an evidentiary hearing on the matter"). But no rule bars a court from holding a hearing if it so chooses. We agree with the trial court that by holding a hearing the magistrate did not prejudice Mother or violate due process. Father's custody motion had been pending for almost five months before the hearing was held. This gave Mother plenty of notice of the hearing and plenty of time to obtain counsel. She had ample opportunity to contest the change-in-circumstance issue. And as the trial court pointed out, Mother did not raise this issue before the magistrate but raised it for the first time in her objections.

{¶ 10} The magistrate found the change-in-circumstances requirement satisfied by five changes that happened after the divorce: Mother now lives with a boyfriend; Audrey is now being home schooled; Mother has moved several times; Mother has filed multiple

requests for relief alleging that Father is abusing Audrey, all of which were denied; and the police have been called to Mother's home because of complaints about altercations there. Mother argues that these findings are based on evidence that either is not part of the record or should not be part of the record. And she argues that these findings do not constitute a change in circumstances, because these facts do not relate to the child's welfare. The trial court simply stated that it disagreed with Mother's argument that the record does not support the magistrate's change-in-circumstance findings.

{¶ 11} As to the first fact, that Mother now lives with a boyfriend, Mother says that there is no evidence about her boyfriend's relationship with Audrey. She says that a new marriage does not constitute a change in circumstances without a showing that the child is negatively affected or that it frustrates visitation with the non-custodial parent. Mother is correct that " 'a new marriage, alone, usually does not constitute a sufficient change in circumstances.' " *Travis v. Travis*, 2d Dist. Clark No. 2006 CA 39, 2007-Ohio-4077, ¶ 32, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997). Even assuming that a new marriage is analogous to a live-in boyfriend, this is not the only change that the magistrate found.

{¶ 12} The magistrate found second that Audrey is now being home schooled. Mother says that there is no evidence that she was in public school either before or after the divorce. But at the hearing, a filled-out student registration form for a local school system was presented, suggesting that Audrey was registered to attend public school. The form is not dated, but it does state that it was revised in August 2010. So Audrey was registered to attend sometime after the parties' 2008 divorce. Mother says that even if Audrey was in public school, a change in academic performance is not enough to justify

finding a change in circumstances so home schooling is not sufficient to constitute a change in circumstance. But this may constitute a change in circumstances if the child would be harmed by the decision to remove her from public school and teach her at home. *Gardini v. Moyer*, 61 Ohio St.3d 479, 575 N.E.2d 423 (1991). Mother testified about Audrey's performance:

> She got a 275 percent on art, 270 percent on gym, and there was no (unintelligible) 275. She finished the courses months ago for the whole year. She's lacking on math because it's algebra and stuff she doesn't know. She has books. I don't remember; I'm too old. And English.

(Tr. 53). Father testified that he believes public school would be better for Audrey.

{¶ 13} The third fact found by the magistrate is that Mother had moved several times. Again, says Mother, there is no evidence that these moves had a negative impact on the child or negatively impacted her visitation with Father. Frequent moves alone do not constitute a change in circumstances, says Mother. We agree, but again, this is not the only change.

{¶ 14} The magistrate found fourth that Mother instituted filings alleging that Father was abusing Audrey. Evidence of only one such filing was presented at the hearing. Father testified that in 2012 Mother petitioned for a civil protection order against him on behalf of Audrey. After a hearing the petition was dismissed with prejudice. The magistrate in that case found no evidence that Audrey was physically harmed, threatened with physical harm, or endangered. Mother says that there was testimony of only this one incident and that this is not a basis on which to find that a change in circumstances has occurred. Again, this is not the only change.

**{¶ 15}** The last change found by the magistrate is that the police had been called to Mother's house numerous times. Reports from the investigating police department were presented at the hearing that show police were dispatched to Mother's house at least eight different times. Mother says that there is no evidence that Audrey was present at any of those times or that she has been negatively affected by the police visits. We note that one of the reports refers to Mother's 13-year-old daughter, who could only be Audrey. Mother's testimony about the incident supports this finding. The harm to Audrey that could reasonably be inferred from this evidence is not from the police visits themselves but from the fact that incidents were occurring in Mother's home serious enough to cause someone to call the police.

**{¶ 16}** Ultimately, "[t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Beismann*, 2008-Ohio-984, at ¶ 20, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). It might be that any one of these five facts alone would not be sufficient to find a change in circumstances. But all of them together justifies finding that a change in circumstances has occurred.

**{¶ 17}** The first and second assignments of error are overruled.

### B. *Admission of police reports*

**{¶ 18}** The third assignment of error argues that the police reports should not have been admitted because they were not authenticated, contain hearsay, and are not relevant. "The admissibility of evidence is generally a matter within the sound discretion of the trial court." (Citations omitted.) *Mason v. Swartz*, 76 Ohio App.3d 43, 55, 600 N.E.2d

1121 (6th Dist.1991).

{¶ 19} At the hearing, eight police reports were admitted as evidence. None of the reports was authenticated. Many of the reports contain narrative statements describing the incident that were written by the dispatcher or responding officer. These statements would constitute inadmissible hearsay if they were offered to prove the events that they record. But it is reasonable to find that the reports were offered simply to show that incidents occurred in Mother's home serious enough that someone thought police intervention was required. Even assuming that the police reports should not have been admitted because they were not authenticated, we cannot say that their admission prejudiced Mother. Mother herself testified that the police had been to her home "many, many times," (Tr. 35), and that there have been "so many incidents" involving the police, (Tr. 34). We also note that this matter was tried to a magistrate, not a jury, "and we presume that the magistrate considered only relevant, material, and competent evidence unless it affirmatively appears to the contrary." (Citation omitted.) *In re C.C.*, 2d Dist. Montgomery No. 26864, 2016-Ohio-1417, ¶ 26; *see also Mason* at 55 ("Greater latitude is permitted in evidentiary matters where a case is tried to a judge without a jury. It is presumed that the court will consider only proper evidence in reaching its decision."). Nothing in the record here indicates that, in reaching their custody decisions, either the magistrate or the trial court considered the police reports for an improper purpose.

{¶ 20} Lastly, we note that after Father rested his case, the magistrate expressly asked Mother if she had any objections to the admission of Father's exhibits: "[Father's attorney] showed you several documents, and he's asking that the Court admit those documents, and I want to know if you have any objections to that." (Tr. 99). Mother did

not assert any specific objections.

**{¶ 21}** The third assignment of error is overruled.

C. *The magistrate's instruction to Mother on objections*

**{¶ 22}** The fourth assignment of error argues that the magistrate erred by telling Mother that while Father was testifying she could not object to his answers, only the questions. Mother says that "[i]t is well settled law that a party may object to an inadmissible question, or to an inadmissible answer to a proper question." During Father's testimony, the magistrate told Mother that she "can only object to the question that's being asked, not the answer that's been provided." (Tr. 62). This instruction was prompted by Mother frequently expressing her disagreement with Father's testimony. The exasperated magistrate finally told her: "Listen to what I said. Once again, you're objecting to his testimony, not to the question. You have to object to the question, and you're not doing that. You just don't like what he's telling me. You get to tell me what you want to tell me when it's your turn." (*Id.* at 63).

**{¶ 23}** A party may ask that improper testimony be stricken from the record, but we do not see any testimony given by Father that was improper. We do not think that the trial court's instruction to Mother constituted an abuse of discretion.

**{¶ 24}** The fourth assignment of error is overruled.

D. *Challenges to various aspects of the magistrate's decision*

**{¶ 25}** The fifth assignment of error argues that the magistrate neglected to mention Audrey's wishes, made findings about school issues based on evidence that is not part of the record, and made other findings that are not supported by the record, specifically, that Mother interfered in Father's relationship with Audrey and that she

verbally abused Audrey.

{¶ 26} The statute governing child-custody decisions states that before custody may be changed the court must also find that the change is in the child's best interest. R.C. 3109.04(E)(1)(a). The statute contains several factors that a court must consider in the best-interest determination, four of which are pertinent here. One factor is the child's wishes and concerns about custody as expressed to the court during an in-chambers interview. R.C. 3109.04(F)(1)(b). Another is the child's adjustment to school. R.C. 3109.04(F)(1)(d). A third factor is which parent is more likely to honor parenting time or visitation. R.C. 3109.04(F)(1)(f). And the final factor is whether either parent has been convicted of or pleaded guilty to a crime involving child abuse, neglect, or domestic violence and whether there is reason to believe that either parent has acted in a way that resulted in a child being an abused child or a neglected child. R.C. 3109.04(F)(1)(h).

{¶ 27} As to the child's wishes, the magistrate noted in her decision that she had interviewed Audrey in chambers and that Audrey "expressed her wishes in a very mature and well thought out manner." The trial court said that the magistrate was not obligated to reveal what Audrey's wishes were. We agree. Regarding school, the magistrate said that Audrey "has had issues at school which caused the decision to home school." Mother says that there is no evidence about Audrey's performance in public school. Under the third factor, the magistrate found that Mother interfered with Father and Audrey's relationship by accusing Father of inappropriate actions towards Audrey. All the legal actions that Mother took against Father accusing him, the magistrate noted, were dismissed. Mother says that the interference finding is baseless. She says that the only evidence is the testimony that she sought a civil protection order against Father and says

that no evidence indicates that her concern prompting this action was unfounded. As to the final pertinent factor, the magistrate said that "[t]here is some scant evidence that the mother has been verbally abusive towards the children as evidenced by the police reports submitted. However, there is no evidence that any charges were filed." Mother says that the finding that she verbally abused Audrey is unsupported by admissible evidence. We do not think that the magistrate actually found that Mother verbally abused the child. Rather, the magistrate is merely pointing out that some evidence of this fact exists in the record.

{¶ 28} We see nothing unreasonable about any of these aspects of the magistrate's decision.

{¶ 29} The fifth assignment of error is overruled.

E. *Weighing the statutory factors*

{¶ 30} The sixth assignment of error argues that the magistrate erred by not considering the harm likely to be caused by the change in Audrey's environment. In addition to finding a change in circumstances and that a custody change is in the child's best interest, before changing custody the court must find that one of three statutorily enumerated situations applies. The third situation is relevant here: "The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii).

{¶ 31} Here, the magistrate did not make this finding, which the trial court recognized. But as part of its de novo review, the court found that the harm to Audrey likely to be caused by the change of environment is outweighed by the advantages of the change. Based on the testimony presented at the hearing, we think that the trial court's

finding is reasonable.

**{¶ 32}** The sixth assignment of error is overruled.

**{¶ 33}** Lastly, we note that the magistrate seemed to think that Mother was intoxicated at the hearing. The magistrate observed that "[t]he mother's demeanor in Court throughout these proceedings causes concern for the Court on her ability to care for [Audrey]. The mother appeared disoriented at all the proceedings and her ability to focus was minimal at best. The Court would have believed her to be intoxicated due to her slurring words and inability to focus." Although the trial court does not mention this, it would be reasonable to accord this telling observation more than a little weight in determining where Audrey's best interest lies.

### III. Conclusion

**{¶ 34}** We have overruled each of the assignments of error presented. The trial court's judgment is therefore affirmed.

. . . . . . . . . . . . .

FROELICH, J., and WELBAUM, J., concur.

Copies mailed to:

Melissa L. Brunett
Thomas R. Schiff
Hon. Thomas J. Capper